IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CLAYTON INTERNATIONAL, INC., | |
| Plaintiff, | 8:21CV309 |
| vs. | |
| NEBRASKA ARMES AVIATION, LLC, ENC PRODUCTS, LLC, TRACY OGLE, JOEY DEROUSSE, and NEBRASKA GAS TURBINE, INC., | **ORDER** |
| Defendants. | |

This Matter comes before the court on Plaintiff's Motion for Sanctions (Filing No. 325). Plaintiff alleges Defendants Nebraska Armes Aviation, LLC ("Nebraska Armes") and Nebraska Gas Turbine, Inc. ("NGTI"), by and through its President and Vice-President Tracy Ogle ("Ogle"), failed to preserve electronically stored information ("ESI") and should be sanctioned. Plaintiff seeks an award of attorney fees and court costs, requests that evidence of Ogle's spoliation be presented to the jury, and requests an adverse jury instruction at trial. For the following reasons, the motion is granted in part and denied in part, the court finding some sanctions in the form of attorney fees and costs appropriate, but the additional relief requested is not.

## BACKGROUND

Plaintiff filed suit in August 2021 claiming Defendants misappropriated proprietary data to perform helicopter modifications for the Royal Jordanian Air Force (the "RJAF"). (Filing No. 1). On or about September 20, 2021, and after being served with notice of the lawsuit, Ogle claimed that his laptop hard drive malfunctioned (hereinafter "the laptop"). Ogle is the president of Nebraska Armes and the vice-president of NGTI. According to

1

Ogle, the laptop's hard drive was encrypted with a program called "Bitlocker," which requires an encryption recovery key to unlock ("the Bitlocker incident"). Ogle believed the laptop became useless when he could not access it through the Bitlocker encryption. (Filing No. 343 at p. 1-2).

The parties dispute what happened next. Ogle claims he took the laptop to Best Buy for service. However, his recollections concerning how he disposed of the laptop have not been consistent. The parties agree that by the end of September 2021, Ogle's hard drive malfunctioned, he disposed of it, and a new hard drive was installed. Ogle subsequently arranged a forensic examination which showed that a new hard drive was installed and formatted on or around November 11, 2021. (Filing No. 344-13). Ogle testified that he used the laptop roughly 30% of the time for work purposes. (Filing No. 344-2 at pp. 3-4, 8-10). Ogle also testified that he traveled with the laptop on multiple work-related trips to Jordan and Bahrain, (Filing No. 327-8 at p. 1-2), and that the laptop contained critical programs related to helicopter modification contracts that could not be accessed on other computers. (Filing No. 344-2 at p. 21).

The parties have litigated this issue for several years now. Plaintiff alleges that it did not learn of it until Ogle filed a Declaration on October 28, 2022, over a year after suit was filed. (Filing No. 186-6). Plaintiff requested a supplemental declaration regarding: (1) what was deleted; (2) whether the deleted data was backed up; and (3) if any of the deleted data was responsive to discovery. (Filing No. 287-1). Defendants did not respond. The parties first raised the issue with the court during a discovery dispute conference with then Magistrate Judge Susan Bazis on December 7, 2022. At that time, the court permitted additional narrow discovery pertaining to the hard drive issue. (Filing No. 131). During this limited discovery, Plaintiff learned that: (1) Defendants never issued a written litigation hold after suit was filed (Filing No. 287-6); (2) Ogle used his hard drive at his discretion for work related purposes and Defendant Armes did not utilize a fileserver for storing electronic information until after Ogle's hard drive was destroyed (Filing No. 287-14); and (3) Ogle consulted with Best Buy, but the chain did not retain possession of his hard drive after the crash. (Filing No. 287-1).

The parties participated in a second discovery dispute call on July 20, 2023, again with Magistrate Judge Bazis. (Filing No. 158). The court permitted continuing discovery to address the hard drive issue and ordered Defendants to supplement their responses to Plaintiff's Interrogatories concerning Ogle's prior Declaration. The court also allowed Ogle to be deposed a second time to inquire about what happened with the hard drive and

whether the information was recoverable. During that deposition, Plaintiff alleges Ogle again changed his story about what he did with the hard drive. In particular, he testified that Best Buy did not keep it, but instead he took it home and disposed of it himself. (Filing No. 188). Because of his confusion regarding the sequence of events, Ogle claimed he wanted to make sure he remembered the events correctly, that he "wasn't trying to hide anything," and that he personally paid for a forensic examination of his mobile device and laptop. (Filing No. 344-3 at 62:11-25).

Based on this new discovery, and because of other issues not directly relevant here, a third discovery dispute conference call was held with Magistrate Judge Bazis on October 26, 2023. (Filing No. 171). The court approved reconvening Ogle's deposition again to explore his knowledge and intent based on the new information. Specifically, Plaintiff was authorized to question Ogle about preservation efforts related to the lawsuit as well as the protocols in place, both personally and by NGTI and Nebraska Armes, and whether they were followed. (Filing No. 188). The court concluded that should those issues not be resolved, the parties were granted leave to file appropriate motions and briefing. Plaintiff then filed this motion. (Filing No. 325).

## LEGAL STANDARDS

A party is obligated to preserve evidence once that party knows or should know that the evidence is relevant to future or current litigation. *See E*Trade Secs. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 588 (D. Minn. 2005) (citing *Stevenson v. Union Pac.R.R. Co.*, 354 F.3d 739, 749 (8th Cir. 2004); see also Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (preservation of evidence required when litigation is reasonably foreseeable). Federal Rule 37(e) further provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;

> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

The appropriate relief for a party's failure to preserve electronically stored information depends upon the level of culpability involved. "[M]easures no greater than necessary" may be imposed if a party fails to preserve electronically stored information and such failure results in prejudice. Courts "may exercise discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1022 (8th Cir. 1999).

If a party can show prejudice, the court may order whatever sanctions are necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1). The court retains discretion as to how best to assess prejudice. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance to the litigation." *Id.* "Prejudice likely exists from lost or destroyed ESI if the lost or missing evidence would be different or more helpful to the party claiming spoliation than the evidence already in existence," but "prejudice does not exist when there is no support for the speculation that the lost evidence would have affected the litigation." *FA ND CHEV, LLC v. Kupper*, No. 1:20-CV-138, 2022 WL 16699304, at *3 (D.N.D. Aug. 31, 2022). Destroyed evidence need not contain information that can be classified as a "smoking-gun" for prejudice to exist. *Stevenson*, 354 F.3d at 748. In some cases, prejudice can be shown by the nature of the evidence itself. *Id.*

Courts have determined that prejudice can exist in a variety of circumstances. For example, in *E\*Trade Secs.*, 230 F.R.D. 582, the court held the plaintiffs were prejudiced when the defendant destroyed hard drives and recorded telephone conversations after they were made aware of the potential for litigation and the information could not be recovered. The court noted that the plaintiff need not demonstrate bad faith or willful intent to destroy to prove such prejudice. *Id.* at 589. Similarly in *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. March 5, 2019), the court found prejudice when defendants destroyed text messages related to the litigation and rendered it "impossible to determine precisely what the destroyed documents contained or how severely the unavailability of [those] documents might have prejudiced" the plaintiffs. In *Kelley as Trustee of BMO Litigation Trust v. BMO Harris Bank N.A.*, 657 B.R. 475 (D. Minn. July 18, 2022), the court found that the trustee in that matter was prejudiced when email backup tapes that

likely contained relevant information were destroyed in violation of the duty to preserve and that evidence could not be obtained from an alternative source.

Once prejudice is established, the court must craft an appropriate remedy. Appropriate sanctions for Rule 37(e)(1) violations can also be varied. Sanctions may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies." Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendments. "[I]n addition to any other sanctions expressly contemplated by Rule 37(e), as amended, a court has discretion to award attorneys' fees and costs to the moving party, to the extent reasonable to address any prejudice caused by the spoliation." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15cv9363 (ALC) (DF), 2018 WL 1512055, at *9 (S.D. N.Y. Mar. 12, 2018); *accord Jones*, 2022 WL 4354586, at *5 ("Among the available sanctions for ESI spoliation, a court may order the spoliating party to pay the aggrieved party's attorney's fees and expenses relating to the ESI loss."); *see* Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendment (noting "[t]he remedy should fit the wrong ...."); *see also* Fed. R. Civ. P. 1 (Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). "[F]ederal courts also have inherent power to award attorneys' fees as a sanction." *Stevenson*, 354 F.3d at 751; *see Schlafly v. Eagle Forum*, 970 F.3d 924, 936-39 (8th Cir. 2020); *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107-11 (2017).

A party's intentional destruction of ESI may warrant heighted sanctions, including a presumption that the information was unfavorable, an adverse jury instruction, or even dismissal of some claims. *See* Fed. R. Civ. P. 37(e)(2). "Federal courts…have inherent authority to impose sanctions against a party when that party destroys evidence that it knew or should have known is relevant to potential litigation and, in doing so, prejudices the opposing party." *Kelley ex rel. BMO Litig. Trust v. BMO Harris Bank, N.A.*, 657 B.R. 475 (citing *Dillion v. Nissam Motor Co.*, 986 F.2d 263, 267 (8th Cir. 1993)); *see also, e.g.*, *Stevenson*, 354 F.3d at 745; *E*Trade Secs.*, 230 F.R.D. at 586 . No showing of prejudice is required on Rule 37(e)(2) because the prejudice is inferred through the court's finding of intent. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

"However, because intent 'rarely is proved by direct evidence,' a court imposing spoliation sanctions 'has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witness in a particular case, and other factors.' " *Kelley ex rel. BMO Litig. Trust v. BMO Harris Bank, N.A.*, 657 B.R. at 485 (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)); *see also Paisley Park Enters., Inc.*, 330 F.R.D. at 236. An intent to deprive, or "bad faith," can be proved indirectly and a party need not "find a smoking gun" before seeking sanctions under this section. *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018); *Morris*, 373 F.3d at 901. "[A] party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer that [the] party purposefully destroyed evidence to avoid its litigation obligations." *Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2022 WL 1464830, at *11 (E.D. Wash. May 9, 2022). The court may shape the appropriate remedy, which again may include default judgment, striking pleadings, an adverse jury instruction, and an award of attorney's fees and costs. *See Stevenson,* 354 F. 3d at 745-46). The most severe sanctions are reserved for those litigants demonstrating "'blatant disregard of the Court's orders and discovery rules' [and] engaging in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case." *Chrysler Corp.*, 186 F.3d at 1022. Negligent conduct, however, is insufficient to support such severe sanctions. *Auer*, 896 F.3d at 858; *Morris*, 373 F.3d at 901. Rule 37(e)(2) sanctions should also not be used when lesser measures through Rule 37(e)(1) may address the loss of ESI. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

## ANALYSIS

Plaintiff seeks sanctions under Rule 37(e)(1), specifically requesting an award of attorney fees and costs incurred by Ogle's destruction or failure to preserve information contained in the laptop. (Filing No. 329 at p. 46). Plaintiff also alleges that Ogle intentionally destroyed the hard drive and engaged in bad faith, warranting an adverse jury instruction under Rule 37(e)(2). Defendant responds that Ogle was forthcoming about the laptop as he voluntarily disclosed that the hard drive was destroyed by the Bitlocker incident. Defendant further contends that Ogle actively participated in efforts to recover any potential evidence that may have been stored on the hard drive, including arranging a forensic evaluation.

6

A. Rule 37(e)(1)

The court finds that Ogle knew or should have known that ESI evidence on his laptop may be relevant shortly after suit was filed and he was personally served. He thus had an affirmative duty to preserve that evidence. The evidence shows suit was filed August 16, 2021. (Filing No. 1). Tracy Ogle and Nebraska Armes Aviation, LLC were personally served on August 23, 2021 (Filing No. 10, 11). NGTI was added as a party in June 2022 and served on June 16, 2022. (Filing No. 77). The parties do not dispute that Ogle discarded the afflicted hard drive and installed a new one on his laptop sometime between September and November 2021. (Filing No. 186-6). It is clear that Ogle, as an individual defendant, and as president of Nebraska Armes and vice president of NGTI, was aware of the pending lawsuit. He was again personally served and he retained counsel. There can be little dispute then as to whether Ogle had a duty to preserve evidence. He clearly did.

The court also finds there was likely relevant information on the laptop and Ogle had an affirmative duty to preserve it. While Ogle testified that there was nothing on the laptop that would have been pertinent to the lawsuit, the evidence certainly suggests otherwise. Ogle acknowledged that he travelled to Jordan and Bahrain for work-related trips with the laptop and used it exclusively. He also used the laptop to access critical government programs related to helicopter modifications, which required new authorizations once the hard drive was replaced because the program was not available on any other computer. (Filing No. 362-2 at 85:8-86:15). Plaintiff contends that the laptop likely contained CAD data, engineering documents and other technical data related to helicopter modifications. The court also questions Ogle's bold statements that there was nothing relevant on the hard drive. These statements of course were made only to the best of Ogle's knowledge, and the course of discovery reveals that Ogle's recollection about certain events has not been entirely reliable. While he may have tried to recall the best he could, Ogle certainly has not been consistent about what he did with the hard drive. It is equally plausible that he cannot recall specifically what may have been on the hard drive.

The parties discussed implementing "reasonable measures to preserve data and other evidence" in emails dated October 2021. (Filing No. 327-2, 327-3). Ogle's counsel responded that he put all of the defendants, including Ogle, on notice of a litigation hold in April of 2021, some five months before the loss of the hard drive. (Filing No. 327-3). As far as data preservation, Ogle stated that his email account was backed up on his Office 365 account and that he often used his email account to send documents to himself, which would be saved in Office 365 storage. (Filing No. 327-8 at p. 4; Filing No. 344-2 at p. 34).

7

Ogle further testified nothing special was done to preserve ESI because "processes were already in place to retain the data" and other documents and data belonging to the company would have been stored on a desktop computer. *Id.* However, Ogle acknowledged that he could not positively identify every file that was saved from his laptop or remember specific files that he may have saved. *Id.* For these reasons, the court is persuaded that Ogle should have taken affirmative steps to preserve the hard drive in anticipation of litigation and he did not.

The inquiry, however, does not end there. The court must determine whether the lost ESI can be restored or replaced from any other source. Fed. R. Civ. P. 37(e). Because ESI "often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendments. For example, Rule 37 sanctions are not available when "e-mails are lost because one custodian deletes them, but they remain available in the records of another custodian." *CAT3, LLC v. Black Lineage, Inc.*, 164 F.Supp.3d 488, 497 (S.D.N.Y. 2016), citing *Paisley Park Enterprise, Inc.*, 330 F.R.D. at 235. Ogle is adamant that this is the case here. Although some evidence may have been lost when he discarded the hard drive, he claims that anything that would have been lost can be gleaned from other sources. Plaintiff argues prejudice because it is now impossible to know what was or was not preserved.

A similar issue was addressed in *Paisley Park Enterprise, Inc.*, 330 F.R.D. at 226. In that case, the plaintiff filed for sanctions after learning through the discovery process that the defendants deleted text messages that they were otherwise required to preserve for purposes of the litigation. Although the court later made an additional bad faith determination, it first held that "neither the Court nor Plaintiff can know what ESI has been lost or how significant that ESI was to this litigation. The…Defendants' claim that no prejudice has occurred is 'wholly unconvincing,' given that 'it is impossible to determine precisely what the destroyed documents contained or how severely the unavailability of these documents might have prejudiced [Plaintiffs'] ability to prove the claims set forth in [their] Complaint.'" *Id.* (citing *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 110 (S.D. Fla. 1987)). Because the plaintiffs in that case were left with an incomplete record of the communications that defendants had with each other and third parties, sufficient prejudice was established. *Id.*

The court finds this same reasoning convincing here. Plaintiff can never fully know what evidence, if any, was lost that may be relevant to the suit. Again, Ogle acknowledged

that he used the laptop for work with both Nebraska Armes and NGTI. He did so during the same time periods at issue in this litigation. While Ogle sometimes emailed documents to himself, he did not have a consistent method of ensuring ESI preservation. While Ogle claims that he would not have had missing CAD data or engineering files on his laptop because "he's not an engineer," the evidence shows that Ogle emailed several .pdf files of CAD data to third parties, which have now been recovered from other sources. (Filing No. 353-9). Ogle clearly possessed these types of files at some point, which makes it difficult, if not impossible, to determine exactly what additional files may or may not be missing.

Plaintiff questions Ogle's memory and his changing story about what he did with the hard drive. (Filing No. 329 at p. 36-37). While Ogle discounts these changes to "failing of human memory," he is at the same time adamant about what was *not* on the laptop—any relevant information. The court again is not convinced that he can have it both ways. (Filing No. 343 at p. 13) Ogle testified that the laptop contained critical programs related to helicopter modification contracts on it, but then claimed that the programs were not related to the RJAF contract at issue here. (Filing No. 344-2 at p. 21). He also boldly claims that there was nothing else relevant on the laptop that cannot be found elsewhere. The parties have litigated this issue now for years, including conducting additional depositions, issuing new discovery requests, and participating in no less than three discovery conferences with the court to determine what information may be missing. This additional discovery has largely been necessary due to Ogle's changing story. Because of the failures of human memory, which the court agrees can happen, neither it nor Plaintiff can be sure if additional relevant information is missing and therefore the court finds this failure to preserve to be prejudicial.

Because the court concludes that Ogle had a duty to preserve ESI and failed to do so in violation of Rule 37(e)(1), it must craft an appropriate remedy. Under Rule 37(e)(1), once a finding of prejudice is made, the court has broad discretion to impose sanctions but may order measures no greater than necessary to cure the prejudice. The remedy should fit the wrong. Fed. R. Civ. P. 37(e), advisory committee's note to 2015 amendments. Here, the prejudice to the plaintiff primarily consists of the additional time and efforts it incurred in obtaining information relative to the hard drive and litigating the spoliation issue. While the court acknowledges that Plaintiff may never be made whole by the loss of the hard drive, but absent a showing of bad faith or intent, it concludes that the prejudice caused by the loss may only be cured with monetary sanctions. *See Karsch v. Blink Health Ltd.*, No. 17-3880, 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019) ("[I]f the ... prejudice to the movant 'lies in the extra time and expense [it incurred] ... [in] obtain[ing] relevant

discovery from third parties, monetary sanctions may be a sufficient cure."); *Vogt v. MEnD Correctional Care, PLLC*, 2023 WL 2414551 (D. Minn. January 30, 2023) (An award of attorneys fees and costs for efforts related to locating missing evidence and bringing the motion for sanctions is appropriate.) The court finds that Plaintiff should be awarded reasonable attorneys' fees and costs that it would not otherwise have incurred but for Ogle's failure to preserve the hard drive.

### B. Rule 37(e)(2)

Plaintiff also seeks an adverse jury instruction sanction under Rule 37(e)(2), arguing that Ogle's destruction of evidence was intentional. The burden to prove intent is higher and requires a showing that a party desired to suppress the truth. The court finds that the plaintiff has not met that burden here. While there can be no doubt that the timing of the destroyed laptop is suspect, occurring just a few weeks after suit was filed and served, the evidence shows Ogle made some effort to mitigate the harm. *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (quoting *Stevenson*, 354 F.3d at 746, 748). Ogle testified that he disposed of the hard drive because he believed it to be useless. After his first deposition, Ogle acknowledged that he had a lot of questions about his own memory of events, so he hired and privately paid for a forensic analysis of the hard drive. (Filing No. 344-3 at p.3). Ogle testified that he was not "trying to hide anything." (*Id.* at p. 20). Additionally, it appears that at least some of the documents on the hard drive were discovered elsewhere, whether on the email server or through saved documents on the company's desktop computers. (Filing No. 343 at p. 14-15). While it certainly remains unknown if everything was recovered, the court finds that the discovery of some mitigates the sanctions that may otherwise be warranted in this case. *Multifeeder Technology, Inc. v. British Confectionary Co. Ltd.*, 2012 WL 4135848 (D. Minn. 2012) (holding that the availability of alternative evidence mitigates the prejudice.)

Other than Ogle's poor recollection, there is no other evidence supporting the Plaintiff's claim of bad faith. The evidence is insufficient to show that Ogle intentionally destroyed the hard drive for the sole purpose of interfering with the litigation. *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1111–12 (8th Cir.1988) (citing federal law for the general proposition that the adverse inference instruction is appropriate only where the spoliation or destruction of evidence is intentional and indicates a fraud or desire to suppress the truth). In *Paisley Park*, 330 F.R.D. at 237, the court granted an adverse jury instruction because it found the discovery misconduct went beyond mere negligence. In that case, bad faith was established because the other party "knew how to preserve

information on their phones and knew that information on their phone might be discoverable" and intentionally destroyed it by wiping their phones more than once after the litigation began. In this case, although the court finds that Plaintiff suffered some prejudice because of the spoliation of evidence and the uncertainty that now exists, it does not find that Ogle acted in bad faith and thus concludes that an adverse jury instruction is improper.

## CONCLUSION

For these reasons, the court concludes that monetary sanctions are merited in this case pursuant to Fed.R.Civ.P. 37(e)(1) and will order sanctions only to the extent reasonable to address Plaintiff's prejudice for the loss of the ESI. *Stevenson*, 354 F.3d at 751. Defendants Ogle, Nebraska Arms and NGTI shall reimburse Plaintiff for reasonable attorney fees and costs stemming from discovery efforts as it pertains to the loss of the hard drive, related to the following:

1. Preparing for and participating in the December 7, 2022 discovery dispute conference (Filing No. 131) and the limited additional discovery ordered by the court thereafter, which included additional "special" interrogatories regarding Ogle's October 27, 2022 Declaration, the subpoena and deposition of a Best Buy representative, and the deposition of Ogle related to the hard drive,
2. Preparing for and participating in the July 20, 2023 discovery dispute conference (Filing No. 158) and the limited additional discovery ordered by the court thereafter, which again included supplemental "special" interrogatories regarding Ogle's October 27, 2022 Declaration and reconvening Ogle's deposition related to the hard drive.
3. Preparing for and participating in the October 26, 2023 discovery dispute conference (Filing No. 171) and the limited additional discovery ordered by the court thereafter, which again included Defendants' supplementing "special interrogatories" regarding the hard drive, reconvening Ogle's deposition a third time, and obtaining the forensic examination report of Ogle's laptop; and,
4. Preparing and submitting Plaintiff's Motion for Sanctions (Filing No. 325) and supporting documents.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Sanctions ([Filing No. 325)](#) is granted in part and denied in part.
2. Plaintiff is entitled to reimbursement for its attorney's fees and expenses incurred in connection with the destruction of the hard drive as set forth herein.
3. On or before March 14, 2025, Plaintiff shall submit an itemized billing statement of its requested fees and costs to Defendant Ogle, Nebraska Armes and NGTI.
4. Defendant Ogle, Nebraska Armes and NGTI shall respond to this itemization within ten days thereafter, or no later than March 24, 2025. The response must include specific objections to itemized tasks and the reasons why.
    a. If Defendant Ogle, Nebraska Armes and NGTI does not timely respond, the fee request will be deemed undisputed and Plaintiff shall file a notice of the fees and costs to be awarded on or before March 24, 2025.
    b. If the parties agree as to the amount to be awarded, they shall file a joint stipulation for entry of an order awarding costs and fees to Plaintiff on or before March 24, 2025.
5. If the parties do not agree on the attorney fees and costs to be awarded, or if Defendant timely objects to Plaintiff's statement of attorney fees and costs to be awarded, Plaintiff shall file a motion for assessment of attorney fees and costs no later than March 31, 2025. This motion shall be submitted in accordance with the court's fee application guidelines outlined in Nebraska Civil Rules 54.3 and 54.4., but a supporting brief will not be required.
6. If a motion for fees is required, the court may award Plaintiff up to an additional $1,000.00 to recover the cost of preparing its motion for assessment of fees.

Dated this 21st day of February, 2025.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.