IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CLAYTON INTERNATIONAL, INC., | |
| Plaintiff, | **8:21CV309** |
| vs. | |
| NEBRASKA ARMES AVIATION, LLC, ENC PRODUCTS, LLC, TRACY OGLE, JOEY DEROUSSE, and NEBRASKA GAS TURBINE, INC., | **ORDER** |
| Defendants. | |

This matter comes before the court on Defendants' Motions *in Limine* to Exclude Expert Testimony of Gregory Kress and Mike Stille (Filing Nos. 421, 438) and Plaintiff's Motion to Exclude Expert Testimony of Joe Palumbo[1] (Filing No. 427). These pretrial matters were referred to the undersigned magistrate judge. *See* 28 U.S.C. §636(b)(1)(A). For the following reasons, Defendants' motion to exclude Gregory Kress's opinion concerning the "engineering estimate" as reflected in paragraph VI of his report will be granted. All other motions will be denied.

## I.    BACKGROUND

Plaintiff Clayton International, Inc. ("Clayton") alleges that Defendants Nebraska Armes Aviation, LLC ("Nebraska Armes"), Nebraska Gas Turbine, Inc. ("NGTI"), ENC

---

[1] Clayton refers to this expert as "Joseph Palumbo," however Defendants state his first name is Giuseppe. (See Filing No. 460, fn. 1). Because Mr. Palumbo signed his expert report as "Joe Palumbo," the court will identify him as such. (Filing No. 440, at p. 21).

Products, LLC ("ENC"), Tracy Ogle ("Ogle"), and Joey DeRousse ("DeRousse") are in wrongful possession of a technical design data package (the "data package") for the UH-60 Black Hawk helicopter. The data package overhauls the UH-60 helicopter to meet requirements of foreign militaries for transporting dignitaries and heads of state—referred to in the industry as "very, very important persons" ("VVIPs"). Clayton represents that it acquired all rights to that data package (as well as a patent on a related component) from another company that used to perform similar services, Sabreliner Corporation ("Sabreliner"), in February 2021.

Clayton alleges Ogle and DeRousse worked on UH-60 helicopter conversions for VVIPs while employed by Sabreliner and contributed to the development of the data package. It claims Ogle and DeRousse are now improperly using the data package in their work with Nebraska Armes, NGTI, and ENC. In particular, Clayton argues Defendants used the proprietary information contained within the data package to obtain contracts with the Royal Jordanian Air Force ("RJAF") to perform modifications to its UH-60 helicopters. Clayton asserts several claims against the Defendants, including trade-secret violations, conversion, deceptive trade practices, tortious interference, and unfair competition. The patent infringement claim was voluntarily dismissed by Clayton on March 7, 2025. (Filing No. 399).

In support of its claims, Clayton designated Gregory Kress and Mike Stille as expert witnesses in the field of aerospace engineering. In response to Clayton's claims, Defendants designated Joe Palumbo as an expert witness in the field of aerospace engineering. Each party contends that the opinions of the other's experts fail to meet the reliability and relevance standard for the admission of expert testimony and should be excluded. Each expert will be addressed in turn.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: (1) the evidence must be based on scientific, technical or other specialized

knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). The rule reflects the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), wherein the United States Supreme Court set forth standards for the admissibility of scientific expert testimony. The Supreme Court held that Rule 702 imposes a special gatekeeping obligation upon a trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. 2786.

The Supreme Court later extended the application of these standards in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Supreme Court there explained that the standards are designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152, 119 S.Ct. 1167. Testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Kudabeck,* 338 F.3d at 860.

To prove reliability, the party offering the expert testimony must show "both that the expert is qualified to render the opinion and that the methodology underlying [their] conclusions is scientifically valid." *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006)).  In making the reliability determination, the court may consider:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). Additional factors to consider include: "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008).

"This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject" these factors as the particular case demands. *Russell*, 702 F.3d at 456 (citation omitted). When making the reliability inquiry, the court should focus on "principles and methodology, not on the conclusions that they generate." *Kuhn v. Wyeth*, Inc., 686 F.3d 618, 625 (8th Cir. 2012). However, "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519 (1997).

Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) (quoting *Clark By & Through Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998)). "Rule 702 is a rule 'of admissibility rather than exclusion.'" *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 551 (8th Cir. 2022). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert*, 509 U.S. at 590). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 778 (8th Cir. 2021). District courts are "not to weigh or assess the correctness of competing expert opinions."

*Id.* The jury, not the trial court, should be the one to 'decide among the conflicting views of different experts.'" *Kumho Tire Co.*, 526 U.S. at 153.

## III.    ANALYSIS

### A.    Gregory Kress

Clayton's first designated expert witness is Gregory Kress ("Kress"). Kress is the vice president and co-owner of Top Flight Aerostructures, Inc. ("Top Flight"), an aerospace engineering and manufacturing company that specializes in reverse engineering, remanufacturing, overhauling, and repairing structural components for the U.S. military. (Filing No. 425, at p. 268). He is an aeronautical engineer with military and civilian aviation experience, including performing reverse engineering using a program called "Solidworks," a computer-aided design ("CAD") software. According to Kress, Clayton retained him as an expert to "review relevant documents and materials, and opine regarding design data, drawings, CAD files, patent claims, and related materials regarding the VVIP modifications to UH-60M helicopters." (*Id.*). Kress opined that based on his review of the data package, (1) Nebraska Armes "CAD and drawing files are too exact to have been reverse engineered without using Sabreliner SHS data and (2) Nebraska Armes simply performed a digital replication of the SHS Solidworks files to create their NAA and NAAI files." (Filing No. 425, at p. 272).

Defendants argue that Kress's testimony should be excluded pursuant to Rules 702 and 703 of the Federal Rules of Evidence and NeCivR 7.1. Defendants argue more specifically that (1) Clayton failed to meet the disclosure requirements of Fed.R.Civ.P. 26(a)(2)(B); (2) Kress's testimony fails to satisfy the admissibility standards under Fed.R.Evid. 702 and *Daubert*; and (3) Kress seeks only to put his "stamp of approval" on Clayton's other expert Mike Stille's opinions. The court finds most of these arguments unpersuasive, except the last one.

1. Disclosure Requirements under Fed.R.Civ.P. 26(a)(2)(B)

Kress authored three export reports. His initial expert report was due December 6, 2024, but was disclosed at 12:03 a.m. on December 7, 2024. (Filing No. 355). On February 7, 2025, the court granted Clayton limited leave to "supplement its expert report as permitted under Fed.R.Civ.P. 26(e) to clarify any opinion *already disclosed* by the expert, to the extent that…additional depositions result in new information previously unavailable to the expert at the time of his report." (Filing No. 394)(emphasis in original). Kress authored a supplemental report, which was provided to Defendants on March 5, 2025. (Filing No. 425, at p. 298; Filing No. 462, at p. 8). He also authored a rebuttal report in response to defense expert Joe Palumbo's opinions, which does not appear to be directly at issue here. (Filing No. 390). Defendants argue that Kress's initial report violates Rule 26(a) because it was disclosed a day after the deadline, was not signed, and Kress failed to disclose the facts he relied on in forming his opinions. Defendants further claim the supplemental report violates Rule 26(a) because it was disclosed months after the discovery deadline and less than 24 hours before Kress's scheduled deposition, which deprived them of adequate time to prepare supplemental topics for his deposition.

Rule 26 requires the proponent of expert testimony to serve opposing parties with a detailed expert report, in writing, that is "prepared and signed by the witness." Fed.R.Civ.P. 26(a)(2). The report must contain the following information: (1) a complete statement of all opinions to be expressed; (2) the basis and the reasons for the opinions expressed; (3) the data or other information considered by the expert in forming the opinions; (4) any exhibits to be used as a summary of or support for the opinions; (5) the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; (6) the compensation to be paid for the study and testimony; and (7) a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. Fed.R.Civ.P. 26(a)(2)(B). "Since failure to disclose in a timely manner is equivalent to failure to disclose," a party must produce its evidence in accordance with Rule 26(a)(2)(B) in a timely manner or risk sanctions under Rules 16 and

37. *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir.1998) citing *Sylla Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995). *See also Bonin v. Chadron Comm. Hosp.*, 163 F.R.D. 565 (D.Neb.1995). "If a party fails to provide information or identify a witness as required by Rule 26(a)…the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

Upon careful review of the report(s) and the record, the court finds that Kress's expert report largely complies with the requirements of Rule 26(a)(2)(B), and any shortcomings are considered harmless.  Exclusion of the entirety of Kress's expert opinions is accordingly not warranted.  To begin, Clayton's late disclosure of Kress's initial report by three minutes could not have caused prejudice to the Defendants. Similarly, the court declines to exclude the opinion based on Kress's failure to sign his report. Several courts have held that this type of rule violation is harmless. *See* Fed.R.Civ.P. 37(c)(1) (failure to follow expert-disclosure rules may result in exclusion of the expert opinion "unless the failure was substantially justified or is harmless"); *Hayes v. S. Fid. Ins. Co.*, No. CV 14-376, 2014 WL 5305683, at *13, *15 (E.D. La. Oct. 15, 2014) (declining to exclude expert opinion contained in unsigned report as rule violation was harmless); *Russo v. Tuttnauer USA Co., Ltd.*, 2024 WL 4449440 (E.D.N.Y. Oct. 2, 2024) (finding that failure to sign report was harmless because defendants were provided an opportunity to depose expert regarding her expert report). There is no question that the report belongs to Kress as he was asked about those opinions during his deposition. Kress's testimony will accordingly not be excluded on those grounds.

Defendants argue that Kress failed to disclose the facts or data he relied upon in forming his opinions. Specifically, they claim Kress failed to list all the facts and data that he reviewed and provided "extraordinarily conclusory terms" as to the CAD files he reviewed. The court disagrees. In his report, Kress represented that, "[i]n forming my opinions, I considered the depositions of Randy Barton, Jason Ogle, and Joey DeRousse, and exhibits attached thereto. I also reviewed Clayton's SHS drawings and extensive CAD

data that was developed by Sabreliner for the UH-60M VVIP modification. I also reviewed NAA drawing and limited CAD that was produced by Defendants." (Filing No. 425, at p. 271).

The exhibits attached to the depositions consisted of email correspondence, letters, answers to interrogatories, compliance statements, CAD files/metadata, contracts and amendments, weight and balance reports, electrical load analysis, VVIP Aircraft Acceptance Test Procedures, drawings, modification contracts, invoices, and other documents. (Filing Nos. 435-4, 437-1, 460-1, 472-10, 474-10, 474-11, 474-14). Kress stated in his report that he reviewed and considered this information, and it appears this information was disclosed in discovery. Kress's report also set forth the facts and data supporting his conclusions. The initial report contained no less than 5 separate paragraphs, with multiple subparagraphs, detailing the bases of Kress's opinions. It also included approximately 17 different images showing what he believed to be metadata for various parts related to his opinion that Defendants incorporated Sabreliner files into their data, rather than reverse engineered the products. He was later asked about these opinions at his deposition.

Defendants further argue that Kress's supplemental report runs afoul of Rule 26(a) because it was disclosed in violation of the court's previous order authorizing supplementation and because it was disclosed less than 24 hours before Kress's deposition. Clayton claims in response that Kress's supplemental report was limited to his review of additional CAD files not previously identified and the additional information was minimal. Clayton in particular notes that Kress was asked to review certain CAD files produced by third-party Aerocraft, Inc. in formulating his initial opinions. Those files, according to Clayton, were not produced until several weeks prior to the initial expert disclosure deadline and only some of the CAD files actually downloaded from the Sharefile Link provided by defense counsel at the time.  (Filing No. 458-1, at para. 6-9). It was apparently not until Aerocraft's 30(b)(6) deposition in early January 2025 that Clayton's counsel learned there were approximately 330 additional CAD files that were previously provided,

but not yet downloaded or reviewed. (*Id.*) The reason why those documents did not download earlier remains a mystery. Those additional files were then provided to Kress for his review, resulting in his brief supplemental report.

The court finds that the supplemental opinion(s) complied with the court's directive in Filing No. 394. Further, the court finds that Defendants had sufficient time to review the report prior to the expert's deposition. The supplemental report consisted of four pages and primarily included the creation dates of 6 CAD files. (Filing No. 425, at p. 298). Defendants deposed Kress and had sufficient time to question him about both his initial and supplemental opinions. The cases referenced by Defendants to argue otherwise are distinguishable. *See Petrone v. Werner Enterprises, Inc.* 105 F.4th 1043 (8th Cir. 2024) (holding exclusion of an expert report was proper when it was disclosed two months after the deadline and constituted a wholly new opinion); *Evans as Trustee for Evans v. Krook,* 680 F.Supp.3d 1080, 1105 (D. Minn. 2023) (expert report disclosed late was allowed because court granted leave to further depose expert about his opinions). Because the court finds that Kress's supplemental report does not violate Rule 26(a), exclusion is not necessary on those grounds.

2. Admissibility

Defendants seek to exclude Kress's testimony on other grounds, primarily pursuant to Rule 702 and *Daubert*. *See* Fed.R.Evid. 702; *Kumho Tire Co.,* 526 U.S. at 147 (discussing *Daubert* and concluding the court's "gatekeeping obligation…applies to all expert testimony"). Federal Rule of Evidence 702 requires that proponents of expert testimony demonstrate "that it is more likely than not that" the expert's "knowledge will help the trier of fact." The proponent must also show that the "testimony is based on sufficient facts or data" and is the product of the "reliable application" of "reliable principles and methods" to the facts of the case. Fed.R.Evid. 702. The court has broad discretion in deciding whether those requirements are met and employs a "flexible and fact specific" inquiry in doing so. *See Russell,* 702 F.3d at 455-56 (quoting *Unrein v.*

*Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2000)). Defendants argue Kress's testimony fails to meet all three requirements.

A central issue in this case is whether Defendants used Clayton's claimed proprietary data obtained from Sabreliner in their VVIP conversion. Kress's opinions rely upon his experience using Solidworks to perform digital replication of CAD parts to determine whether the digital data was replicated or "reverse engineered" from scratch. (Filing No. 425, at p. 272). The methodology Kress used involved reviewing and understanding metadata within the Solidworks software platform. (*Id.*) Defendants assert that the court should exclude Kress's testimony as unhelpful and unreliable because Kress is an aeronautical engineer, not a data forensic analyst, and therefore not qualified to interpret and opine on metadata. Kress, however, stated that he has over thirty years of experience reverse engineering CAD data utilizing Solidworks. (Filing No. 425, at p. 268). Kress reviewed and analyzed Nebraska Armes' data to evaluate whether it reverse engineered the drawing and CAD files used to create its version of the UH-60M VVIP modification and his report details the level of accuracy required to do so. His opinion is not dependent on a specific understanding of metadata, but rather how metadata is interpreted in Solidworks to determine whether a document has been copied or replicated. Indeed, the court's duties under Rule 702 include "ensuring that the [expert's] testimony does not exceed the scope of the[ir] expertise." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). But so long as an expert's opinion has a sufficient basis in their specialized knowledge, any gaps in their "qualifications or knowledge generally go to the weight of" their testimony rather than admissibility. *Am. Auto Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 726 (8th Cir. 2015) (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)). Given Kress's experience utilizing Solidworks to perform these types of functions, within his field of expertise, the court finds he is qualified to provide an expert opinion on these topics.

Defendants next argue that Kress's testimony and conclusions are not based upon sufficient facts or data, nor do they utilize reliable scientific principals and/or methods. The

court again disagrees. As fully explained above, Kress based his opinions on the discovery provided and his extensive background using Solidworks and reverse engineering. Upon review of his opinions, he specified in his report the method of his reverse engineering, including the "information trail that CAD software leaves while the reverse engineering is being performed, the difficulties involved in reverse engineering, and the accuracy of the subsequent results from using various reverse engineering techniques." (Filing No. 425, at p. 269). Kress again represented that he has performed this type of reverse engineering for over thirty years and currently uses this process and software in his position at Top Flight. Accordingly, Defendants have not demonstrated that Kress's methodology, reasoning, data, or assumptions are so unreliable as to render his opinions unhelpful to the jury, the primary standard. *See Finch*, 630 F.3d at 1062.

Defendants also argue that Kress relied upon incomplete data, he should have considered additional CAD files, and he failed to identify additional explanations for how the alleged proprietary data could have been obtained. But these issues go to the weight of Kress's testimony, not its admissibility. *See In re Bair Hugger*, 9 F.4th at 777-78. Defendants argue, for example, that their expert, Joe Palumbo, used additional data or identified additional explanations for the source of the data package, making Kress's opinions unreliable. But if true, Defendant may certainly cross-examine Kress about those alleged inadequacies and highlight that fact for the jury. At the end of the day, this appears to be a classic "battle of the experts," and the trier of fact will need to weigh the evidence and determine which opinion(s) are more credible and believable. *See Daubert*, 509 U.S. at 596 (courts are not to "weigh or assess the correctness of competing expert opinions"); *Kumho Tire Co.*, 526 U.S. at 153 (the jury, not the trial court, should be the one to "decide among the conflict views of different experts"). The Court simply cannot say that Kress's analysis is so speculative or "fundamentally unsupported that it can offer no assistance to the jury." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).

11

3. Kress's adoption of Stille's opinion

Defendants last argue that the court should exclude Kress's opinion found within Section VI of his report, which states:

> It is my opinion that the amount of engineering effort to create the SHS data that NAA obtained from Sabreliner would cost in excess of $16,000,000. In reaching my opinion, I relied upon a detailed cost estimate to complete the Sabreliner technical data package prepared by Mike Stille. Based on industry standards an approximate 129,984 engineering hours would be required to replicate the design and documentation effort documented in the SHS series drawings for the UH-60M VVIP modification. Using a billing rate of $125 per hour the effort would cost $16,248,000.

(Filing No. 425, at p. 296). Specifically, Defendants argue that this opinion fails to meet Rule 702 standards because an expert witness may not "simply repeat the findings of another expert without attempting to assess the validity of the opinions relied upon." *In re ResCap Liquidating Trust Litig.,* 432 F.Supp. 3d 902, 932 (D. Minn. 2020). As to this point, the court agrees.

It is well-established that an expert witness cannot rely on another expert without employing his own methodology or analysis under *Daubert. See In re TMI Litig.,* 193 F.3d 613, 715–16 (3d Cir.1999) (finding expert opinion unreliable under *Daubert* because the expert "chose to rely blindly upon the conclusions generated by Plaintiff's other experts rather than evaluating relative strength or weakness of each of the strands of evidence available to him" (internal quotations omitted)); *TK–7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732–33 (10th Cir.1993) (the witness failed to demonstrate a basis for concluding report was reliable and showed no familiarity with methods and reasons underlying the hearsay report); *Sims v. State Farm Mut. Auto. Ins. Co.,* No. 4:13CV00371 JLH, 2016 WL 3511712, at *1 (E.D. Ark. Jan. 13, 2016)("Where, however, an expert does not simply rely upon data or facts collected by another expert for use in forming an opinion but, instead, adopts wholesale the opinion of another expert, Rule 703 does not render the testimony admissible."); *Simon v. Select Comfort Retail Corp.,* No. 4:14-CV-1136 JAR, 2016 WL 160643, at *4 (E.D. Mo. Jan. 14, 2016) ("Rule 703 does not permit an expert to simply

12

"parrot" the opinions of other experts."); *Hill v. Fikes Truck Line, LLC*, No. 4:11-CV-816, 2012 WL 5258753, at *3 (E.D. Mo. October 24, 2012)(excluding expert opinion because it adopted "wholesale the opinion of another expert" and was not based on the expert's own application or analysis).

Here, Kress offered no independent analysis as to damages, outside of stating his opinion was based on "industry standards." It appears, based upon the limited information contained in this section of his report, that he made no additional attempts to assess the validity of Stille's opinion. Nowhere in his opinion does he analyze the SHS drawings individually to determine the amount of time and money it would take to replicate them. Instead, Kress wholly adopted Stille's opinion regarding the cost of recreating the data package, without offering any discussion about his own assessment of the validity, the methodology used, or the reasons underlying the opinion. Clayton may not use Kress to vouch for, or bolster the testimony of, Stille. While Stille may be permitted to address those issues, Kress offers nothing more than to say "ditto." That approach is not permitted and accordingly, the court will grant that portion of Defendants' motion, but only as to the opinions expressed in Paragraph VI of Kress's report. The remaining issues as noted above are denied

## B.    Mike Stille

Defendants next seek to exclude the opinions offered by Mike Stille ("Stille"). They argue that Stille was improperly designated as a non-retained expert in violation of Fed.R.Civ.P. 26(a)(2)(B) and (C) and that his expert opinions are unreliable and irrelevant under Rule 702 and *Daubert*. This motion will also be denied.

Stille is an engineer and is Clayton's President and Chief Operating Officer. On December 7, 2024, Clayton disclosed Stille as a "non-retained" expert, who was expected to opine on the following topic(s):

> Mr. Stille is expected to testify based on his education, training and years of experience as an engineer working in the aviation industry, the components comprising the UH-60 VVIP data package Clayton purchased from

Sabreliner Aviation, LLC, his training and experience preparing cost and time estimates, the cost and time estimate he prepared in connection with the UH-60 VVIP data package identified as Clayton010942, Defendants' associated cost savings realized as a result of their misappropriation of the UH-60 VVIP data package, and Clayton's lost profits as a result of Defendants' misappropriation of the UH-60 VVIP data package.

(Filing No. 444-1, at p. 6). It appears Clayton's counsel subsequently provided Stille's "Cost Estimate Spreadsheet" to defense counsel by email on or around December 10, 2024. (*See Id.*, Exhibit 4 at para. 4-5 and Filing No. 444-2). Notably, Stille was previously deposed on or around April 15, 2024, approximately eight months prior to Clayton's expert designation. (Filing No. 443, Ex. 1). Defendants point out that when he was questioned at the time about the scope of Clayton's alleged damages, he responded only that "[i]t would be loss of contract." (Filing No. 443, Ex. 1, at 249:10-24). When he was asked if there were any other damages, he responded "I don't know." (*Id.*, at 249:22-24). Apparently having a change of heart, Stille later prepared the subject cost estimate spreadsheet and now plans to testify at trial concerning the amount of engineering hours that would be necessary to design the UH-60M VVIP modification and the estimated savings to Defendant. Clayton now disclaims any intention of asking Stille to opine on "lost profits." (Filing No. 465 at p. 4, fn. 1).

The court will address Defendants' arguments in reverse, discussing first whether the information is relevant and helpful to the trier of fact and whether Stille is qualified to render these opinions. The court will then address the level of disclosure necessary under Rule 26.

1. Admissibility

Again, Rule 702 permits an expert to testify in the form of an opinion or otherwise if the expert's "[s]cientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Once qualified, the expert's testimony must be based on sufficient facts or data, the testimony must be the product of reliable principles and methods, and the expert must have reliably applied those principles

14

and methods to the facts in the case. In determining reliability, there are several factors the court can consider, including whether the "expertise was developed for litigation or naturally flowed from the expert's research" or whether the proposed expert "sufficiently connected the proposed testimony with the facts of the case." *Presley v. Lakewood Engineering and Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009). The overarching goal, of course is to "separate expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Id.* (internal quotation omitted).

The court finds Stille's opinions to be helpful and based upon sufficient facts or data and the product of reliable principles and methods. To begin, federal courts have concluded that damages in misappropriation cases can take several forms, including "the development costs the defendant avoided incurring though misappropriation." *PPG Ind., Inc. v. Jiangsu Tie Mao Glass Co. Ltd.*, 47 F.4th 156, 162 (3rd Cir. 2022) (quoting *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012)). The opinions concerning cost savings of the Defendants accordingly would be relevant and useful to the trier of fact. Stille prepared and provided a cost estimate spreadsheet, breaking down the UH-60 VVIP data package, which included 91 drawings, drawing sheets, number of detail parts, assemblies and installations. (Filing No. 444-2). Stille provided an estimate of the number of hours each component would take to recreate and applied an hourly rate to each component.

Stille's background certainly makes him qualified to address those issues. While he is not an economist or accountant, he has a background in mechanical engineering and has experience and responsibility for developing engineering and manufacturing cost estimates for the aircraft modification projects for Clayton and others. (Filing No. 464-1). According to Stille, those projects have included modifications to the Los Angeles County Sheriff UH-3H helicopter, modifications for the Canadian Forces EH-101 helicopter, and VIP interior for the Egyptian Air Force VH-3A and AS-61 helicopter. (Filing No. 464-1, at para. 2). Stille, therefore, has prior knowledge and experience related to preparing cost estimates in the aerospace industry. His testimony here is limited to estimating the manhours required to produce the UH-60 VVIP Data Package, which is based on the number of installations,

assemblies and detail parts documented and contained within the package. (Filing No. 464-1, at para. 6). He appears to be qualified to offer those opinions.

Stille also has used this method of estimating before, since at least 1994 while working as an engineer in the aerospace industry. (Filing No. 464-1). In addition to the engineering background discussed above, Stille has demonstrated sufficient knowledge and experience in creating cost estimates to withstand the *Daubert* rigors. Stille's previous employers in the aerospace industry used the same methods, demonstrating their reliability in the engineering context. (Filing No. 464-1). The court is not persuaded that Stille needs to be an economist or accountant to provide such estimates, as similar cost analyses are apparently performed regularly in the engineering industry. The court accordingly finds the subject matter and related opinions meets the standards under Rule 702 and *Daubert*. The court will now address Defendants' argument that Stille's expert designation was inadequate.

2. Rule 26 Disclosures

Defendants argue that Stille was improperly designated as a "non-retained" expert, when in fact he should have been classified as a "retained" expert. Rule 26 distinguishes between a witness who is "retained or specially employed to provide expert testimony in the case" and one who is not retained. Fed.R.Civ.P. 26 (a)(2)(B). "A retained or specialty expert is 'an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony.'" *Compass Bank v. Eager Rd. Assocs., LLC*, No. 4:12CV1059JCH, 2013 WL 5786634, at *4 (E.D. Mo. Oct. 28, 2013) (quoting *Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1, 6 (1st Cir.2011)). "A non-retained expert is one whose testimony arises from his or her involvement in events giving rise to the litigation." *Id.*

This distinction matters because Rule 26(a)(2)(B) requires production of an expert report from a retained expert. "Rule 26(a)(2)(B) disclosures, however, are not required for non-retained experts." *Id.* A non-retained expert must instead disclose "the subject matter

16

on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705," and "a summary of the facts and opinions to which the witness is expected to testify." Fed.R.Civ.P. 26(a)(2)(C)(i)-(ii). If a party fails to satisfy the Rule 26(a) requirements, "the party is not allowed to use that information or witness ... at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). But "in addition to or instead of that sanction," the court may exercise discretion in imposing other sanctions as set forth in Rule 37(b)(2)(A)(i)-(vi). *See id.* Courts must always keep in mind that Rule 702 seeks to liberalize the rules governing the admission of expert testimony. "The rule clearly is one of admissibility rather than exclusion." *Lauzon v. Senco Prods. Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Stille is clearly a hybrid witness, as he is an expert in the field of engineering, but he is also an officer for Clayton who no doubt has intimate knowledge of the facts and circumstances at issue in this case. That would seem to make him the classic non-retained expert, having "ground-level involvement" in the events giving rise to this litigation. *Evans*, 680 F.Supp.3d at 1110. The court accordingly finds that disclosing him as such under Rule 26(a)(2)(C) was appropriate, and so too was his disclosure. *See Hurd v. Union Pacific Railroad Co.*, 2025 WL 713516 at *20 (D. Neb. Mar. 4, 2025) (noting that the rules committee intended for disclosures under Rule 26(a)(2)(C) to be "considerably less extensive" and warned that courts "must take care against requiring undue detail"). Here, Stille's disclosure, read in conjunction with his disclosed spreadsheet, was a sufficient "summary" of his facts and opinions. Notably, the information included was considerably more than the information provided by Defendants as to their own non-retained expert disclosures filed on January 6, 2025. (Filing No. 380).

The court has not ignored that Stille's opinions were developed many months after his initial deposition and Defendants' arguments concerning prejudice and unfair surprise are understandable. But, there has been ample time to address these issues and to alleviate any prejudice that might have existed. Defendants' rebuttal expert disclosures, for example, were not due until January 6, 2025, meaning there was some time to counter-designate if

17

necessary. (Filing No. 307). Moreover, the deadline to depose experts did not expire until February 13, 2025, and there is no indication that Defendants requested a second deposition of Stille prior to that date.

Ultimately, and the court will restate, that the extent of an expert's personal knowledge (whether retained or non-retained), goes to the weight to be given to that opinion rather than to its admissibility. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955-6 (8th Cir. 2007) (denying a plaintiff's motion to exclude a non-retained expert from testifying, explaining that the factual basis of expert's testimony went to weight rather than admissibility); *See also Smith v. Curators of the Univ. of Missouri*, 2018 WL 6729653, at *2 (W.D. Mo. 2018) ("Plaintiff also contends [the non-retained expert] should be precluded from testifying to particular time periods or facts due to a lack of personal knowledge. However, that issue is suited for cross-examination and does not warrant the exclusion of an expert witness."). Even if Stille's opinions are considered "shaky," they should be the subject of vigorous cross-examination at trial as prescribed by *Daubert* and its progeny. Accordingly, the Motion to Exclude Mike Stille is denied.

## C.    Joe Palumbo

Clayton moves to exclude the testimony of Defendants' retained expert Joe Palumbo ("Palumbo") under Rule 702 and *Daubert*. (Filing No. 427). Clayton contends that Palumbo's reports are: (1) not reliable; (2) not relevant; (3) conflate fact and opinion testimony; and (4) contain improper legal conclusions. This motion too will be denied, for many of the same reasons already noted.

Palumbo is an engineer with Sikorsky Aircraft ("Sikorsky") with over thirty years of experience in engineering, including the "development of US Army UH-60M and international derivatives S-70i/M Black Hawk helicopters." (Filing No. 440, at p. 21). He is familiar with VVIP customizations, including the technical data requirements specifically related to the RJAF UH-60M Black Hawk FMS VIP customization. (*Id.*) Palumbo authored three expert reports related to this litigation: (1) the initial report (Filing

No. 440, at p. 21); (2) a spare parts report (Filing No. 440, at p. 36); and (3) a rebuttal report addressing Clayton's expert report (Filing No. 440, at p. 40).

According to his initial report, Palumbo reviewed the technical data included in the design packages provided by the U.S. army, Sabreliner (of which Clayton now argues it owns), and Nebraska Armes. (Filing No. 440, at p. 33). He also reviewed photos and videos, as well as a site survey performed at Nebraska Armes. Palumbo opined that Nebraska Armes created new drawings, tooling, models and work instructions, which made significant changes to the Sabreliner data, thereby invalidating any claim of trade secret or patent infringement. (*Id.*) In his spare parts report, Palumbo concluded that six specific SHS parts "can be reverse engineered for replacement, repair or product improvement," and such practice is standard in the industry. (Filing No. 440, at p. 38). Palumbo opined that no trade secret violation occurred because these parts can be reverse engineered. (*Id.*) Finally, in his rebuttal report addressing Kress's opinions, Palumbo states that the United States government retains full data rights to the VVIP modification for UH-60M helicopters at issue here. As a result, he questioned Kress's analysis and opines that Kress lacks the technical knowledge of both of the UH-60M helicopter's technical data, as well as the "VVIP development funding sources, USG [U.S. government] data rights, Jordan access to SHS data package, technical and maintenance field issues, new customer requirements and design a decade later, VVIP modification experience, and credibility in developing UH-60M VVIP modification data package estimate claimed to be copied based on a few airframe machined parts." (Filing No. 440, at p. 44).

In arriving at his opinion, Palumbo represented that he considered the drawings and models produced by Clayton and Nebraska Armes, as well as the US Army technical data for VIP drawings related to the helicopter modifications at issue here. Palumbo then analyzed the drawings that the U.S. government owns and compared it to the drawings that Clayton claims it owns. In doing so, Palumbo concluded that 83% of the drawings Clayton believes it owns as proprietary data are identical to those the U.S. government owns and are openly available to government military contractors. (Filing No. 440, at p. 32).

19

In Clayton's view, Palumbo's opinions fail to meet the *Daubert* standard, and as a result, he should be excluded as an expert witness in this case. The court again disagrees. As an initial matter, the court finds Palumbo to be qualified and his opinions reliable. Whether the jury finds them credible should be up to them. Palumbo appears to have extensive experience in engineering and is acutely aware of the technicalities involved with the data package at issue between the parties. He has worked specifically with UH-60M helicopters most of his professional career and has helped design and facilitate VVIP modifications for many years. (Filing No. 440). Palumbo's anticipated testimony is based on sufficient facts as to the particular circumstances in the case and his conclusions, at least on their face, appear to be the product of reliable principles and methods.

Clayton argues that because Palumbo was unaware of a "significant design change" when the helicopter was completed, his opinions are unreliable and should be excluded. (Filing No. 451, at p. 11). But this criticism again goes to the weight a jury may accord the testimony, rather than its admissibility. The court further considered Clayton's other challenges to Palumbo's methodology and opinions. This includes, for example, his comparisons to U.S. Army drawings and assumptions they were the same as the Sabreliner drawings, and opinion regarding prior concerns allegedly voiced to him about design flaws with VVIP modifications. Again, the court finds the alleged deficiencies in his assumptions and methods do not preclude him from testifying at trial. This testimony will not be excluded merely because Palumbo's assumptions and methods differ from those of Clayton's designated experts. *See Synergetics, Inc.*, 477 F.3d at 956 ("mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony"); *S.E.C. v. Das*, 723 F.3d 943, 951 (8th Cir. 2013). Instead, criticism between otherwise qualified experts is "grist for the jury." *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 739 (8th Cir. 2000). For these reasons, Clayton's motion to exclude Palumbo as an expert witness is also denied.

Accordingly,

IT IS ORDERED:

1. Defendants' Motion *in Limine* to Exclude Expert Testimony of Gregory Kress regarding the "engineering estimate" as reflected in Section VI of his report is granted and that opinion and accompanying testimony is excluded. The remainder of the motion is denied. (Filing No. 421).

2.  Defendants' Motion *in Limine* to Exclude Expert Testimony Mike Stille is denied. (Filing No. 438).

3. Plaintiff's Motion to Exclude Expert Testimony of Joseph Palumbo is denied. (Filing No. 427).


Dated this 15th day of July, 2025.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge
