IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CLAYTON INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NEBRASKA ARMES AVIATION, LLC, ENC PRODUCTS, LLC, TRACY OGLE, JOEY DEROUSSE, and NEBRASKA GAS TURBINE, INC., <br><br> Defendants. | 8:21CV309 <br><br> **ORDER** |

      This matter comes before the court on Plaintiff's Motion for Assessment of Attorney Fees and Costs to be Awarded. (Filing No. 454). Plaintiff was previously awarded monetary sanctions incurred in connection with the destruction of Defendant Tracy Ogle's ("Ogle") hard drive, as fully explained in the undersigned magistrate judge's order granting Plaintiff's Motion for Sanctions (the "sanctions order"). (Filing No. 406). After Plaintiff objected, the presiding district court judge[1] affirmed the award for monetary sanctions and granted additional non-monetary sanctions to Plaintiff. (Filing No. 494).

      In the sanctions order, the undersigned ordered Plaintiff to submit an itemized billing statement and requested fees to Defendants.[2] Defendants objected to the requested fees, which prompted this motion. The undersigned carefully reviewed Plaintiff's itemized

---

[1] The Honorable Robert F. Rossiter, Jr., Chief United States District Judge

[2] The "Defendants" subject to the sanctions order are Tracy Ogle, Nebraska Armes Aviation, LLC, and Nebraska Gas Turbine, Inc.

billing statement and analyzed each entry therein. For the following reasons, the motion is granted, but the court does find some reduction in the amount of fees to be appropriate.

## I.   BACKGROUND

Plaintiff filed suit in August 2021, claiming Defendants misappropriated certain proprietary data to perform helicopter modifications for the Royal Jordanian Air Force. (Filing No. 1). Shortly thereafter, on or about September 20, 2021, Ogle claimed that his laptop hard drive malfunctioned, and he disposed of it. The destruction of this hard drive has been the subject of much litigation, including three discovery dispute calls with the court, resulting in the court authorizing additional discovery and depositions, as well as the Plaintiff's successful Motion for Sanctions. (Filing No. 325). Ultimately the court found that Ogle had a duty to preserve the hard drive and failed to do so, which caused prejudice to Plaintiff.

Pursuant to the sanctions order, the court found that monetary sanctions were warranted under Fed.R.Civ.P. 37(e)(1) to the extent reasonable to address Plaintiff's prejudice for the loss of the hard drive. Specifically, the court granted reasonable attorneys' fees and costs stemming from discovery efforts related to the following general activities:

1. Preparing for and participating in the December 7, 2022 discovery dispute conference (Filing No. 131) and the limited additional discovery ordered by the court thereafter, which included additional 'special' interrogatories regarding Ogle's October 27, 2022 Declaration, the subpoena and deposition of a Best Buy representative, and the deposition of Ogle related to the hard drive.

2. Preparing for and participating in the July 20, 2023 discovery dispute conference (Filing No. 158) and the limited additional discovery ordered by the court thereafter, which again included supplemental 'special' interrogatories regarding Ogle's October 27, 2022 Declaration and reconvening Ogle's deposition related to the hard drive.

3. Preparing for and participating in the October 26, 2023 discovery dispute conference (Filing No. 171) and the limited additional discovery ordered by the court thereafter, which again included Defendants' supplementing 'special interrogatories' regarding the hard drive, reconvening Ogle's

      deposition a third time, and obtaining the forensic examination report of Ogle's laptop; and,

4. Preparing and submitting Plaintiff's Motion for Sanctions (Filing No. 325) and supporting documents.

(Filing No. 406, at p. 11). Plaintiff initially submitted a statement of fees and costs to Defendants totaling $96,229.14. (Filing No. 455-2). Defendants objected to all but $6,622.00, claiming inappropriate "block billing" in violation of NECivR 54.3, lack of particularity in violation of NECivR 54.4(a)(1) and 54.4(b)(2), and that the requested fees were duplicative or exceeded the scope of activities identified in the sanctions order. (Filing No. 455-2). In response, Plaintiff removed several entries, reducing the requested fees and costs to $86,897.72. Defendants again object and argue that an award of no more than $5,237.00 is necessary and reasonable under the circumstances. (Filing No. 468).

## II.    LEGAL STANDARD

The determination of what is "a reasonable attorneys' fee is a matter peculiarly within the district court's discretion." *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021) (quoting *Greater Kan. City Laborers Pension Fund v. Thummel*, 738 F.2d 926, 931 (8th Cir. 1984) (applying 29 U.S.C. § 1132(g)(2)(D)); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir.2005) ("Attorney[s'] fees are within the broad discretion of the district court"). If the court concludes that an award of attorneys' fees is appropriate, then the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Gumbhir v. Curators of the Univ. of Missouri*, 157 F.3d 1141, 1146 (8th Cir. 1998). This approach is referred to as the lodestar method. The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

Once a lodestar amount is determined, the court then considers "the relevant factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) to increase or decrease the loadstar figure if appropriate." *League of Women Voters of Missouri v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021) (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* Thus, after calculating the lodestar amount, a district court "may [then] consider other factors to 'adjust the fee upward or downward.'" *Marshall*, 8 F.4th at 712 (quoting *Smith v. AS Am., Inc.*, 829 F.3d 616, 623 (8th Cir. 2016)).

### III. ANALYSIS

A. ATTORNEY FEES

Plaintiff seeks $84,116.38 in attorneys' fees and $2,781.34 in costs and expenses related to its Motion for Sanctions. Plaintiff's Index (Filing No. 455) reflects that this fee amount includes 309.00 hours worked primarily by attorney Matthew T. Watson ("MTW"), with additional work by attorney Erin R. Robak ("ERR"). Both attorneys billed $290.00 per hour for a total of 24.1 hours in 2022 (totaling $6,989.00), $300.00 per hour for a total of 95.5 hours in 2023 (totaling $28,650.00), and $310.00 per hour for a total of 189.4 hours in 2024 (totaling $58,714.00). (Filing No. 455-3). Combined, the total amount billed was $94,353.00. It appears Plaintiff's counsel then provided certain "courtesy discounts" without description of $10,236.62, resulting in the amount claimed of $84,116.38. (Filing No. 455-3).

4

1.  Determination of Lodestar Amount

Initially, the court must determine whether the charged hourly rate is reasonable. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)). Another judge of this court observed that "[r]ecent fee applications reflect attorney billing rates for experienced litigators in Nebraska range from $250 to $350 per hour." *BJ's Fleet Wash v. City of Omaha*, 2023 WL 2964432, at *5 (D. Neb. Mar. 8, 2023)). Defendants do not contest the reasonableness of the rates for either attorney and neither does the court. Both attorneys have practiced law for nearly twenty years and are shareholders in their respective law practices. (Filing No. 455-1, at para. 1-3). The court finds the hourly rates are both reasonable and appropriate and are consistent with the prevailing market rates in the community.

The Court must next determine whether the hours expended were reasonable. In considering whether hours were "reasonably expended," courts should "weigh the hours claimed against their own knowledge, experience, and expertise of the time required to complete similar activities." *Paris School District v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018) (citation omitted). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1056 (8th Cir. 2025) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). The party seeking attorney fees has the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Plaintiff submitted records indicating that counsel expended 309.00 hours in connection with the four categories authorized for fees. (Filing No. 455). The court is not required to accept counsel's submission of hours as conclusive to the issue of reasonableness, but must instead weigh those hours against the nature of the work and the

5

appropriateness of the time spent. *See Fires v. Heber Springs Sch. Dist.,* 565 F. App'x 573, 575 (8th Cir. 2014) (citing *Hensley,* 461 U.S. at 433–34). In doing so, the court finds that many of the entries and time spent appear to be reasonable and justified based upon the contested discovery issues concerning the laptop. The court is familiar with this litigation and the efforts necessary to address those issues.

In determining the appropriate lodestar, however, the court cannot ignore the significant amount of time spent on preparing for and drafting the motion for sanctions and supporting briefs. It appears in particular that some 105.6 hours, or $32,736.00[3], was incurred for purposes of researching and drafting the motion and supporting documents. Thereafter, another 48.5 hours, or $15,035.00,[4] was incurred in researching and writing the reply brief in support of its sanctions motion. Combined, counsel billed nearly $50,000.00 for the general activities listed in Category 4 of the sanctions order. The court concludes that some adjustment to those fees is necessary given its experience with litigation matters and the issues raised, which were certainly fact intensive, but not unusually complex. *See Tabech v. Gunter*, 869 F.Supp. 1446, 1456 (D. Neb. Dec. 1, 1994) (quoting *Grant v. Martinez,* 973 F.2d 96, 99 (2nd Cir.1992) (the issue for the court to determine at this juncture is "not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures").

Rather than make a line-by-line reduction, the court will exercise its discretion to make a percentage reduction. *See, e.g*., *Rural Water Sys. No. 1 v. City of Sioux Ctr.*, 202 F.3d 1035, 1039 (8th Cir. 2000) (affirming percentage reduction based on excess hours); *Beckler v. Rent Recovery Sols.*, LLC, 83 F.4th 693, 695 (8th Cir. 2023) (allowing a 50% reduction in fees when considering the complexity of the issues presented); *Kline v. City of Kan. City, Mo.*, Fire Dep't, 245 F.3d 707, 709 (8th Cir. 2001) (concluding that district court did not abuse its discretion in reducing the preliminary total by 15% in requested fees

---

[3] Entry Nos. 88-112.
[4] Entry Nos. 113-123.

6

for "overlawyering"). While there is no precise rule or formula for making these determinations, the court finds that an initial 10% reduction is appropriate, making the lodestar amount $75,704.75 ($84,116.38 x 90%), which the court finds is reasonable and justified.

      2.     Adjustments to the Lodestar Amount

After determining the lodestar amount, the court should consider whether the amount should be further reduced or modified. "[A] reduction in attorney's fees may be appropriate [1] when recordkeeping is poor or [2] block billing is submitted." *Ryan Data Exch., Ltd. v. Graco, Inc.*, 913 F.3d 726, 736 (8th Cir. 2019). The court may also "reduce attorney hours, and consequently fees, for [3] inefficiency or duplication of services in cases where more than one attorney is used." *L.B. ex rel. A.J. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). In response to Plaintiff's Motion, Defendants assert a number of reasons as to why the requested fees should be stricken and/or significantly reduced. (Filing No. 468).

*i.*    *Block Billing and Lack of Particularity*

Defendants argue that Plaintiff engaged in prohibited block billing under NECivR 54.3(b).[5] That rule currently provides:

> A party applying for attorney's fees and related nontaxable expenses must support the application with appropriate and reliable evidence and authority, including affidavits and any written argument. "Block billing"—meaning an entry containing multiple tasks with only one increment of time noted (like 3.20 hours) and one amount billed ($304.00) for the collection of listed tasks—is prohibited. Attorneys should follow appropriate criteria in connection with fee applications.

---

[5] Defendants in particular object to the following entries in Filing No. 455-3 as improperly block billed: 1, 3, 6, 7, 8, 9, 12, 13, 14, 15, 16, 17, 18, 22, 23, 24, 25, 26, 28, 30, 31, 33, 36, 38, 39, 42, 43, 45, 48, 51, 53, 55, 56, 57, 58, 59, 60, 61, 63, 64, 66, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 89, 90, 91, 92, 93, 95, 96, 97, 98, 99, 100, 101, 102, 102 [*sic*], 104, 105, 106, 107, 107 [*sic*], 109, 110, 111, 112, 115, 117, 118, 119, 120, 121, 122, 123. See Filing No. 468, at fn. 2.

*Id.* As both parties point out, this rule was not effective until December 1, 2024, which would only apply to Entries 113 through 123. Before then, block billing was not expressly disallowed, but it was still discouraged. *See, e.g., Osseo Area Schs. v. A.J.T.*, No. 21-1453, 2025 WL 904492, at *12 (D. Minn. Mar. 25, 2025); *cf. Safelite Grp. v. Rothman*, No. 15-1878, 2017 WL 3495768, at *6 (D. Minn. Aug. 11, 2017) (acknowledging that the Eighth Circuit has not prohibited block billing, but also that block billing makes it difficult to apportion time). And while Plaintiff is correct that NECivR 54.3 was not amended until later to prohibit block billing, this court still found that the practice was inappropriate under the 2023 and 2024 versions of NECivR 54.4(a). *See Benson v. City of Lincoln*, 774 F.Supp.3d 1046, 1104 (D. Neb. May 13, 2024). The court in *Benson* stated,

> [T]he lack of a *per se* prohibition on block-billing time simply does not prevent the Court from considering a reduction for block billing when doing so is expressly allowed by *Gruttemeyer v. Transit Authority*, 31 F.4th 638, 651 (8th Cir. 2022); the local rule states guidelines on billing that require attorneys to '[i]dentify with particularity the work done,' NECivR 54.4(a)(1); and the block-billed entries may fail to 'present the court information essential to a reasoned explanation of the fee award.' NECivR 54.4(a).

*Id.*

A time entry in a petition for fees should "identify the general matter of [counsel's] time expenditures" to "enable a reviewing court to identify distinct claims" and assess the reasonableness of the fee request. *Hensley*, 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. The term "block billing" means a list of multiple (and seemingly unrelated) tasks with one single time entry. *See Bowen v. Allied Prop. & Cas. Ins. Co.*, No. 4:11CV3163, 2013 WL 942443, at *6 n.14 (D. Neb. Mar. 11, 2013). As one district court noted, "[B]lock billing is the lumping together of daily time entries consisting of two or more task descriptions." *Wiley v. Portfolio Recovery Assoc., LLC*, 594 F.Supp.3d 1127, 1152 (D. Minn. 2022). But that same court further noted that while "[i]nadequate documentation may warrant a reduced fee, fees may be awarded based on block-billed time entries[.]" *Id.* (internal quotation omitted). A reduction in fees may be warranted "where hours billed for multiple

8

tasks appear[] excessive, or where billed time needs to be eliminated for certain tasks." *Id.* (internal quotation omitted).

For many of the entries, the court had no trouble understanding what work was performed during a given time block nor assessing whether the time was reasonably expended for the related tasks noted. Several longer entries contain sufficient detail and specificity to afford reasonable confidence that the time billed was productively spent and reasonably related to one general task. For example, in Entry No. 99 on August 27, 2024, Matthew Watson billed 6.40 hours to: "Draft brief in support of motion for sanctions; legal research re same; review of documents and possible evidence re same." (Filing No. 455-3). While the better (and now required) practice certainly would be to separate those activities and allocate the time spent on each, the entry sufficiently identified the work completed in the designated amount of time and encompassed only one primary task – the work involved in drafting a brief. The fees will accordingly be permitted, subject of course to the general percentage reduction previously noted.

But there are other entries that do not pass muster. Upon careful review, the court finds that eight of Plaintiff's entries constitute impermissible block billing, making it difficult for the court to determine whether the activity and the corresponding fee charged are reasonable. For example, in Entry No. 22 on February 9, 2023, Mr. Watson billed 4.90 hours to: "Draft letter to Judge Bazis regarding T. Ogle hard drive discovery; review and analysis of issues and case law re same; analysis of letter from defendants' counsel regarding discovery disputes; email correspondence to defendants' counsel re failure to produce native files re T. Ogle Declaration." (Filing No. 455-3 at p. 2). This entry contains multiple tasks and the court cannot determine how much time was spent on each. The activities are also not obviously related. Likewise, in Entry No. 55 on August 31, 2023, Mr. Watson billed 3.90 hours for: "Review and analysis of supplemental discovery responses received from Defendants; research and analysis of case law re spoliation and failure to provide timely notice of destruction of relevant information; draft T. Ogle deposition outline; phone and email communications with S. Kasal re T. Ogle Microsoft

9

365 logs; email to opposing counsel re same." (Filing No. 455-3). This entry contains five separate and arguably distinct tasks, but only one block of time.

Even if there is no rule against block billing, the Eighth Circuit has made clear that "a reduction in attorney's fees may be appropriate when ... block billing is submitted." *Gruttemeyer*, 31 F.4th at 651 (quoting *Ryan Data Exch.*, 913 F.3d at 736). The court agrees that some of Plaintiff's submissions warrant a reduction, as some of the billing entries are inadequate because they do not provide sufficient information for the court to determine the reasonableness of the time spent. *See Ryan Data Exch.*, 913 F.3d at 736; *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991). As a result, the court will exclude from Plaintiff's award those entries which it determines constitute impermissible block billing, albeit fewer entries than objected to by Defendants. This will include, in particular, Entry Nos. 16, 22, 23, 38, 55, 76, 77, and 78, totaling $10,342.00.

Defendants next argue that some 33 additional entries lack specificity in violation of NECivR 54.4. That rule provides certain guidelines designed to "help attorneys present to the court information essential to a reasoned explanation of a fee award." *Id.* In order to identify with particularity the services performed, the attorney should generally "state who was present, the subjects discussed, and how long it lasted," and for research, the party seeking fees should "state who did it, the subjects and issues researched, and whether the results were incorporated into a brief, motion, or pleading." *Id.* at (a)(1)(A)-(B). Applying those standards here, the court finds two additional entries should be removed because they are impermissibly vague. Entry No. 48, for example, broadly states "[a]ttention to exhibits to position statement; finalize position statement" and Entry No. 52 states "[a]ttention to matters re T. Ogle hard drive dispute." (Filing No. 455-3). The court cannot ascertain what "attention to" means, whether any legal analysis was done in relation to those matters, and if the activity was a reasonable expense. Accordingly, those two entries will also be reduced from Plaintiff's award in the amount of $360.00. For the remaining entries at issue, the court can generally assess the particular activity noted, whether the activities are related and are essentially one "task," and whether the time spent on that task was reasonable.

Additional exclusion for that reason is accordingly not necessary. *Hensley,* 461 U.S. at 437 & 437 n.12 (1983).

ii.   *Duplicative Entries*

Defendants next challenge several entries as unreasonable, arguing they reflect unnecessary or duplicative work completed by multiple attorneys, or they bill for the same work twice.[6] As for the first issue, the court agrees that it may reduce attorney hours and fees for duplication or inefficiency where more than one attorney is used. *See Kierst,* 56 F.3d at 864. However, "[t]ime spent by two attorneys on the same general task is not…per se duplicative" and "[c]areful preparation often requires collaboration and rehearsal." *Rodriguez–Hernandez v. Miranda–Velez,* 132 F.3d 848, 860 (1st Cir. 1998). This court previously found that when two lawyers were present for depositions or meetings, the billing by both was not duplicative under that standard. *See ACLU Nebraska Found. v. City of Plattsmouth, Neb.,* 199 F.Supp.2d 964, 969 (D. Neb. 2002).

Defendants reference other entries as unnecessary or duplicative because both Ms. Robak and Mr. Watson billed for similar work. They argue that tasks repeated by multiple lawyers or performed multiple times undermine the reasonableness of the fees requested. The court disagrees. When multiple lawyers are working on the same case, it makes sense that they may do similar research, even if it overlaps with that of their co-counsel. For example, Entry No. 69 ("Review and analysis of report received from Defendants' computer expert re replacement of hard drive") by Mr. Watson and Entry No. 70 ("Review and analysis of forensic exam report re Ogle laptop") by Ms. Robak, both on December 19, 2023, are not duplicative or unnecessary. These entries reflect work done by both attorneys regarding the same subject, but are more likely the result of collaboration on the topic of Mr. Ogle's hard drive. *See Rodriguez–Hernandez,* 132 F.3d at 860. Those entries will not be excluded as duplicative.

---

[6] Defendants in particular object to the following entries in Filing No. 455-3 as duplicative: 60, 61, 66, 67, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 81, 82, 99, 100. Filing No. 468, at fn. 8, 9.

Defendants also take issue with Entry Nos. 66 and 67 because both attorneys attended the discovery conference with the magistrate judge on October 26, 2023. In Entry No. 66, Ms. Robak billed 3.00 hours to "Prepare for and attend discovery conference; email to client re the same." In Entry No. 67, Mr. Watson billed 1.60 hours to "Participate in discovery conference with magistrate judge and opposing counsel." (Filing No. 468, at p. 9). The court sees no issue with both attorneys charging for their attendance at the same conference call with the court. Entry No. 67 simply delineates only one task – participate in the discovery conference. Entry No. 66, on the other hand, includes three different tasks – prepare for the call, participate in the call, and then correspond afterward with the client about the call. Again, the better practice would be to separate these activities and bill accordingly. However, the court can determine that the primary task in this entry is participating in the discovery conference, and the related activities are reasonably connected to that primary task. Although this entry may constitute block billing under the local rule's current prohibition, the court has discretion to make a determination of reasonableness under prior precedent and will exercise that discretion here. *Hensley*, 461 U.S. at 437. Neither Entry No. 66 nor 67 will be excluded as duplicative or block billing.

Defendants further contend that some entries are duplicative because they are identical and bill for the same work twice. The court agrees that entries which are simply copied and pasted for multiple entries in a row are inadequate, as the court is unable to determine whether the activity or the time spent was reasonable. For example, Entry No. 73 states "Draft factual background section re spoliation motion; analysis of issues and prior pleadings and documents re same." The following two entries on the following two days are identical. While it certainly may be reasonable that brief writing may extend more than one day, counsel must provide sufficient information regarding the continuation of that work and what specific activity was accomplished. Plaintiff did so in Entries 96, 97, and 98, wherein each entry contained additional detail as to what was added to the brief on that day, i.e. "draft brief…including spoliation standard under Fed.R.Civ.P. 37" or "draft brief…including burden of proving prejudice." Those details appropriately provide the

court with necessary information to decide the reasonableness of the time expended, as opposed to a potential billing error. As such, the court will not exclude the first entry related to a permissible task, but each additional identical entry will be excluded. Accordingly, Entry Nos. 13, 17, 18, 74, 75, 100, and 114, totaling $7,092.00 will be excluded as duplicative.[7]

iii.   *Adherence to the Sanctions Order*

Defendants also object to many of the requested fees as improper for falling outside the categories allowed in the sanctions order.[8] The court agrees that some entries fall outside of the sanctions order, and should be excluded, but many of the objected entries do not. For example, Category 1 authorized the recovery of fees for:

> Preparing for and participating in the December 7, 2022 discovery dispute conference (Filing No. 131) and the limited additional discovery ordered by the court thereafter, which included additional "special" interrogatories regarding Ogle's October 27, 2022 Declaration, the subpoena and deposition of a Best Buy representative, and the deposition of Ogle related to the hard drive.

(Filing No. 406). Defendants seek exclusion of Entries 1-9 because the work was performed before the December 7, 2022 discovery conference. But the order clearly contemplated the recovery of potential activities in preparing for, as well as participating in, the conference. The evidence shows that Plaintiff was first notified of the destruction of Mr. Ogle's hard drive on October 28, 2022, through Ogle's declaration. (Filing No. 186-6). Entry No. 1 is dated just a few days later, on November 4, 2022, and appears to relate directly to the declaration and Defendants' loss of the data. The other entries likewise indicate Plaintiff's preparation of the legal issues related to the hard drive and information

---

[7] Entry Nos. 76, 77, and 78 have been excluded as block billing, but are also duplicative and could be excluded under either analysis.

[8] Defendants in particular object to the following entries in Filing No. 455-3 as falling outside the scope of the sanctions order: 1, 2, 3, 4, 5, 6, 7, 8, 9, 22, 23, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 52, 62, 63, 64, 65, 80, 84, 86. Filing No. 468, at fn. 9, 10, 11.

ultimately provided to the court. As such, the court finds that these disputed entries are related to Category 1 and therefore authorized by the sanctions order.

Defendants also take issue with any reference to Best Buy, arguing the court did not authorize those fees. (Filing No. 468, at p. 11). Again, Defendants mistake the plain reading of the sanctions order. While Defendants may take issue with those charges, such as Entry No. 34 ("Phone conference with Best Buy paralegal re communicating with M. Davis and possible deposition") and Entry No. 35 ("Analysis of issues re need for deposition or affidavit from Best Buy Employee"), those activities fall within the sanctions order, Category 1.

That said, and to Defendants' point, it does appear Plaintiff seeks to recover additional fees related to depositions other than that of Mr. Ogle. Category 3 authorized fees related to:

> Preparing for and participating in the October 26, 2023 discovery dispute conference (Filing No. 171) and the limited additional discovery ordered by the court thereafter, which again included Defendants' supplementing "special interrogatories" regarding the hard drive, reconvening Ogle's deposition a third time, and obtaining the forensic examination report of Ogle's laptop;

(Filing No. 406). Entry Nos. 79-86 appear to relate to Mr. Ogle's re-convened deposition as well as the depositions of J. DeRousse and 30(b)(6) depositions of Defendants Nebraska Armes and NGTI. Those additional depositions are not authorized by the sanctions order, but now the entire series of entries must be excluded because they are also block billed. The court is not able to decipher which time is allotted for which task. The exclusion of Entry Nos. 79-86 totals $10,106. The court finds that the remainder of the entries not specifically addressed fall within the categories authorized by the court, and unless excluded for another reason, will not be excluded here.

    3.    <u>The Johnson Factors</u>

After calculating the lodestar, "the district courts should generally evaluate 'the ultimate reasonableness of the award ... by considering relevant factors from the twelve

factors listed' in *Johnson* [*v. Georgia Exp., Inc.*]." *League of Women Voters*, 5 F.4th at 941. As the Supreme Court has noted, many of the Johnson factors are considered in the lodestar determination, such that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of the representation," and the "results obtained" from the litigation are reflected in the lodestar amount. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). And the court does not need to exhaustively address every factor. *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1190 (N.D. Iowa 2003).

Defendants make no specific argument that any *Johnson* factor disfavors Plaintiff's award, and the court agrees that many of the factors support Plaintiff's claim. As noted above, Plaintiff was represented by two seasoned attorneys with the experience and ability to handle these matters and charged a customary hourly fee in this market. The hard drive issue has been a long-fought battle, albeit not one that will be over until the end of trial. The undersigned notes that Plaintiff was only initially partially successful on its Motion for Sanctions, however upon objection, the presiding district court judge granted Plaintiff most of the relief it sought. *See Marshall*, 8 F.4th at 712-13 ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney[s'] fees"). As such, Plaintiff prevailed on the merits of its claims related to spoliation. Having already reduced the initial lodestar amount by 10% when considering the first and second *Johnson* factors, the court finds that no additional reduction is necessary.

B. COSTS AND EXPENSES

In addition to attorney's fees, Plaintiff also seeks $2,781.34 in costs and expenses related to the transcripts of the deposition of Best Buy employee Mitchell Poe, two depositions of Tracy Ogle, and deposition of D. Kuchenreuther who performed the forensic evaluation. Defendants argue that Plaintiff is not entitled to recover any of their claimed expenses because they do not comply with NECivR 54.4(b)(2) and go beyond the scope of the sanctions order.

15

NECivR 54.4(b)(2) provides that expenses sought must be identified "with particularity," and "[f]or depositions, list the court reporter's name, the date of taking, the deponent's identity, the purpose of the deposition (discovery or evidentiary), and the use made of the deposition." *Id.* The court finds that Plaintiff's Entry No. 124 through 127 are particular enough to know who the deponent was, what court reporting agency took the deposition, and what date the deposition occurred. Again, the local rule as to expenses is a *guideline*, not requiring strict adherence. Therefore, the court finds that the transcripts do not violate the local rule. The court also finds that each expense falls within the sanctions order and are therefore authorized. While the court did not particularly designate the deposition of the forensic examiner, it certainly included the cost of discovery and obtaining a forensic evaluation report, all of which are sufficiently related.

## IV.    CONCLUSION

Based on the foregoing, the court finds that a large part of Plaintiff's claimed fees and expenses are recoverable and consistent with the court's prior order, but the following entries are not and will be excluded:

> Entry Nos. 13, 16, 17, 18, 22, 23, 38, 48, 52, 55, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 100, and 114.

These deductions total $27,900.00. Subtracting that amount from the lodestar of $75,704.75, results in recoverable fees of $47,804.75, plus an additional $2,781,34 in costs, amounting to a total recovery of $50,586.09. This amount is consistent with other awards in this circuit and is reasonable under the circumstances of this case. *See Benson,* 774 F.Supp.3d at 1104 (concluding that a 45% reduction in fees was appropriate to account for block billing, vague statements, and partial success); *H.J. Inc.*, 925 F.2d at 260 (affirming the district court's reduction of the lodestar by 20% for inadequate documentation alone). The court also permitted in its prior sanctions order additional relief in the amount of $1,000.00 to Plaintiff should further motion practice be necessary to address the fee issue,

which of course it was. Accordingly, the Plaintiff will also be awarded that additional amount.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Assessment of Attorney Fees and Costs to be Awarded ([Filing No. 454](#)) is granted in part. Plaintiff is hereby awarded attorneys' fees of $47,804.75 and costs of $2,781.34, for a total amount of $50,586.09, against Defendants Tracy Ogle, Nebraska Armes Aviation, LLC, and Nebraska Gas Turbine, Inc.
2. Plaintiff is awarded an additional $1,000.00 associated with filing the instant motion, making Plaintiff's total recovery for fees and costs $51,586.09.

Dated this 28th day of August, 2025.

BY THE COURT:

s/ Ryan C. Carson  
United States Magistrate Judge